**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

PALTALK HOLDINGS, INC.            §
                                  §
vs.                               §            CASE NO. 2:09-CV-274-DF-CE
                                  §
SONY COMPUTER ENTERTAINMENT       §
AMERICA, INC., ET AL.             §


**MEMORANDUM OPINION AND ORDER**


I.      **OVERVIEW OF THE PATENTS AND TECHNOLOGY**

        In 2002, plaintiff PalTalk purchased U.S. Patent Nos. 5,822,523 (the "'523 Patent") and

6,226,686 (the "'686 Patent") (collectively the "PalTalk Patents).  The PalTalk Patents are

related.  The application for the '523 Patent was filed on February 1, 1996.  The application for

the '686 Patent was filed on September 28, 1999 as a continuation of U.S. Patent No. 6,017,766

("the '766 Patent"), which itself is a continuation of the '523 Patent.  The '523, '766, and '686

Patents all share the same specification.  Therefore, references to the written description of

PalTalk Patents will generally be limited to the '523 Patent.

        The PalTalk Patents are both titled "Server-Group Messaging System for Interactive

Applications."  The PalTalk Patents describe a system for reducing both the network load and the

message processing requirements that arise because of network communications in a multi-user

interactive application.  The system reduces the load by using a group messaging server

("GMS") as a central destination for messages between host computers.  The GMS is responsible

for tracking groups and group membership.  The GMS may further reduce the load on the

network by aggregating the messages that it receives from a particular host computer.

Aggregation allows more efficient data communication by reducing the number of messages that a recipient host must process. In one of its key applications—online gaming—the GMS allows for more efficient communication of large amounts of information between players, thus enabling games to become quicker.

Claim 1 of '523 Patent recites:

A method for providing group messages to a plurality of host computers connected over a unicast wide area communication network, comprising the steps of:

> providing a group messaging server coupled to said network, said server communicating with said plurality of host computers using said unicast network and maintaining a list of message groups, each message group containing at least one host computer;

> sending, by a plurality of host computers belonging to a first message group, messages to said server via said unicast network, said messages containing a payload portion and a portion for identifying said first message group;

> aggregating, by said server in a time interval determined in accordance with a predefined criterion, said payload portions of said messages to create an aggregated payload;

> forming an aggregated message using said aggregated payload; and

> transmitting, by said server via said unicast network, said aggregated message to a recipient host computer belonging to said first message group.

Claim 1 of the '686 Patent recites:

A method for facilitating communications among a plurality of host computers over a network to implement a shared, interactive application, comprising the steps of:

> (1) receiving a create message from one of the plurality of host computers, wherein said create message specifies a message group to be created;

(2) receiving join messages from a first subset of the plurality of host computers, wherein each of said join messages specifies said message group;

(3) receiving host messages from a second subset of said first subset of the plurality of host computers belonging to said message group, wherein each of said messages contains a payload portion and a portion that is used to identify said message group;

(4) aggregating said payload portions of said host messages received from said second subset of the plurality of host computers to create an aggregated payload;

(5) forming an aggregated message using said aggregated payload; and

(6) transmitting said aggregated message to said first subset of the plurality of host computers belonging to said message group;

wherein said aggregated message keeps the shared, interactive application operating consistently on each of said first subset of the plurality of host computers.

## II.     PRIOR PROCEEDINGS

The '523 Patent was litigated in 2000 in the Northern District of California before Judge Alsup in the case captioned *HearMe v. Lipstream Networks, Inc.*, No. C 99-04506 WHA. During those proceedings, Judge Alsup construed some of the same claim terms that are at issue in this proceeding; however, the court did not have the benefit of reviewing the claims in light of the later-issued '686 Patent.  Judge Alsup issued his final claim construction ruling on August 25, 2000.

This court construed the claims of the PalTalk Patents twice during *PalTalk v. Microsoft Corp.*, 2:06-CV-00367-DF ("PalTalk I").  The claims were first construed in the court's July 29, 2008 claim construction order, and again construed in the court's February 20, 2009 supplemental claim construction order (the "Supplemental Order").     Following claim

construction, the court presided over the PalTalk I trial in March 2009.  The parties settled after

PalTalk had presented its entire case-in-chief and Microsoft had completed part of its case.

## III.  GENERAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION

"A claim in a patent provides the metes and bounds of the right which the patent confers

on the patentee to exclude others from making, using or selling the protected invention."  *Burke,*

*Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).  Claim construction

is an issue of law for the court to decide.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967,

970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims,

the specification, and the prosecution history.  *Markman*, 52 F.3d at 979.  The specification must

contain a written description of the invention that enables one of ordinary skill in the art to make

and use the invention.  *Id.*  A patent's claims must be read in view of the specification, of which

they are a part.  *Id*.  For claim construction purposes, the description may act as a sort of

dictionary, which explains the invention and may define terms used in the claims.  *Id*.  "One

purpose for examining the specification is to determine if the patentee has limited the scope of

the claims."  *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of

the patentee's invention.  Otherwise, there would be no need for claims.  *SRI Int'l v. Matsushita*

*Elec. Corp*., 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc).  The patentee is free to be his own

lexicographer, but any special definition given to a word must be clearly set forth in the

specification.  *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992).

Although the specification may indicate that certain embodiments are preferred, particular

embodiments appearing in the specification will not be read into the claims when the claim

language is broader than the embodiments.  *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  In *Phillips*, the court set forth several guideposts that courts should follow when construing claims.  In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude."  415 F.3d at 1312 (emphasis added) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To that end, the words used in a claim are generally given their ordinary and customary meaning.  *Id*.  The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Id*. at 1313.  This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to and intended to be read by others skilled in the particular art.  *Id*.

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id*.  Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument."  *Id*. at 1315 (quoting *Markman*, 52 F.3d at 978).  Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims.  *Id*. at 1314-17.  As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive

portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes.

*Phillips*, 415 F.3d at 1319-24.  The approach suggested by *Texas Digital*—the assignment of a limited role to the specification—was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term.  *Id*. at 1320-21.  According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent."  *Id*. at 1321.  *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter.  *Id.*  What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented.  *Id.*  The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word.  *Id*. at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record.  In doing so, the court emphasized that claim construction issues are not resolved by any magic formula.  The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language.  *Id*. at 1323-25.  Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

## IV.    DISPUTED ISSUES

At core, the disputed claim terms stem from a disagreement regarding two issues: 1) whether the "aggregated payload," "aggregated message," and "server message" must be "single" identical payloads/messages or can be one or more payloads/messages; and 2) whether

the aggregating limitations require aggregating all payload portions of incoming messages or only data items from those payloads.

## A. "Aggregated Message" / "Aggregated Payload" / "Server Message"

The dispute regarding whether the aggregated payload/message and server message terms means "one or more" payloads/messages, or is limited to a single payload/message, spans several disputed claim limitations. Each of the contested claim limitations that involve this dispute will be discussed individually in section V below. The following limitations put the dispute in context:

| Representative Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **'523 Patent, Claim 1:**<br><br>1. A method for providing group messages to a plurality of host computers connected over a unicast wide area communication network, comprising the steps of:<br><br>…<br><br>aggregating, by said server in a time interval determined in accordance with a predefined criterion, said payload portions of said messages to create an aggregated payload;<br><br>**forming an aggregated message** using said aggregated payload; and<br><br>**'686 Patent, Claim 18:**<br><br>18. A method for facilitating communications among a plurality of host computers over a network to implement a shared, interactive application, comprising the steps of:<br><br>(1) receiving a host message from one of the plurality of host computers belonging to a message group, wherein said host message contains a payload portion and a portion that is used to identify said message group;<br><br>(2) **forming a server message** by using said payload portion of said host message; and aggregating said payload portion with the payload portion of a second host message received from another of the plurality of host computers belonging to said message group… | "Creating **one or more** aggregated messages that contain **data items from** an aggregated payload." | "Creating a **single** aggregated message that contains **the aggregated payload**." |

PalTalk argues that the "aggregated message" transmitted to multiple host computers can be "one or more" different messages. Defendants, however, argue that the "aggregated message"

must be a "single" message—i.e., all of the aggregated messages transmitted to the plurality of host computers must be identical.

### i. Prior Construction

In PalTalk I, this issue was raised in the context of claim 5 of the '686 Patent. Claim 5 recites:

> A method for facilitating communications among a plurality of host computers over a network to implement a shared, interactive application, comprising the steps of:
> …
> (2) forming a server message using said payload portion of said host message;
>
> (3) **transmitting said server message** to each of the plurality of host computers belonging to said message group; and
>
> (4) suppressing said server message such that said one of the plurality of host computers which originated said host message does not receive said server message;
> ….

In PalTalk I, defendant Microsoft argued that claim 5 of the '686 Patent required "that the server transmit the same message to each member of a group." *See* Supplemental Order at 7, attached as Ex. E to PalTalk's Opening Claim Construction Brief. The court relied on its prior constructions and the specification to reject Microsoft's argument:

> In its Claim Construction Order, the Court construed the claimed "server message" to mean "a message formed by a server for delivery to *one or more* group members." Dkt. No. 107 at 38 (emphasis added). Microsoft's position would redefine this term to mean "a message formed by a server for delivery to *all* group members." The plain language of this Court's construction, however, allows for an embodiment in which a server message is sent to one group member. This means that another server message could be sent to separate group member. This reading is supported by the '686 Patent specification. Specifically, this reading is supported by Figure 7, in which individually tailored messages are sent to four different host computers—styled 100, 101, 102, and 103. Moreover, this Court has recognized that Figure 7 in the '686 Patent depicts the claimed echo suppression. Dkt. No. 107 at 35. Because Figure 7 depicts server messages of varying content being sent to different host computers, Microsoft's position

would vitiate the preferred embodiment depicted therein. Such a result is improper in this case. *See Vitrionics*, 90 F.3d at1583.

In sum, this Court finds that claim 5 does not require that the server send the same message to each host computer.

*Id.* at 7-8. In other words, the court previously held that the "server message" of claim 5 can be "individually tailored messages"—i.e., one or more messages sent to different host computers. *Id.*

Claims 1, 3, and 18 of the '686 Patent require aggregated messages/payloads and server messages to be sent to a plurality of host computers. PalTalk argues that the court's prior construction of "server message" recited in claim 5 of the '686 Patent is equally applicable to the construction of the "aggregated message," "aggregated payload," and "server message" recited in claims 1, 3, and 18 of the '686 Patent. As such, PalTalk argues that the court should construe these terms in a manner consistent with its prior reasoning by concluding that the "server message," "aggregated message," and "aggregated payload" recited in claims 1, 3, and 18 mean "one or more" messages/payloads.

In response, Defendants first note that claim 5 of the '686 Patent employs echo suppression,[1] while claims 1, 3, and 18 do not. Defendants concede that there is no dispute that echo suppression can result in one host receiving a different "server message" than another host given the different manner in which echo-suppressed server messages are created. But, according to Defendants, even in claim 5, other than the material excluded due to echo suppression, a common server message must be sent to all of the host computers in the recited "plurality."

Furthermore, Defendants argue that claim 5 presents an entirely different issue from that presented in claims 1, 3, and 18 because it does not recite an aggregation step. In claim 5, the

---

[1] Echo suppression is the technique by which the GMS avoids sending back to a host the same message that the host previously sent to the server for distribution to the other group members.

"server message" is formed by "using said payload portion of said host message."  In contrast, the "server message" in claim 18 is formed by "using said payload portion of said host message; and aggregating said payload portion with the payload portion of a second host message…." Defendants, therefore, argue that the court should conclude that its previous construction of "server message" recited in claim 5 of the '686 Patent, which found that the server does not have to send the same message to the various host computers, is not applicable to claims 1, 3, and 18.

### ii. Plaintiff's Arguments

In addition to its argument regarding the court's prior claim construction, PalTalk contends that its proposed construction follows from the plain language of the claims.  PalTalk notes that the Federal Circuit has consistently held that "an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'"  *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000; *see also Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008).  Claims 1, 3, and 18 of the '686 Patent recite either "*an* aggregated message," "*an* aggregated payload," or "*a* server message."  Furthermore, PalTalk contends that, as explained below, the specification of the PalTalk Patents describes more than one "aggregated message," "aggregated payload," and "server message."  As such, PalTalk argues that because the asserted claims use the open-ended transitional phrase "comprising" and the specification teaches more than one message/payload, the aggregated message, aggregated payload, and server message terms must be construed to mean "one or more" messages/payloads.

PalTalk also contends that its proposed construction is supported by the written description and disclosed embodiments of the PalTalk Patents.  PalTalk argues that figures 6 and 7 support its contention that the GMS creates a different aggregated payload/message or server

message for each of a plurality of host computers – i.e., "Host A" has a destination address of "A" and receives payloads "P2," "P3," and "P4," while "Host B" has a destination address of "B" and receives payloads "P1," "P3," and "P4":

| '523 Patent; Figure 6 |  |
|---|---|
| '523 Patent; Figure 7 |  |

As such, PalTalk argues that the "aggregated message," "aggregated payload," and "server message" must be construed to mean "one or more" messages/payloads to avoid excluding these embodiments of the PalTalk Patents.

In response, Defendants argue that, contrary to PalTalk's contentions, not every claim of the PalTalk Patents must read on figures 6 and 7, which both employ echo suppression. *Beneficial Innovations, Inc. v. Blockdot, Inc.*, Nos. 2:07-CV-263-TJW-CE, 2:07-CV-555-TJW-CE, 2010 WL 1441779 at *8 (E.D. Tex. Apr. 12, 2010) ("Every claim does not need to cover every disclosed embodiment of a patent."). Defendants note that claim 5 of the '686 Patent is the only claim that specifically recites "suppressing said server message such that said one of the

plurality of host computers which originated said host message does not receive said server message…."  Furthermore, there is no dispute that both figure 6 and 7 of the PalTalk Patents disclose echo suppression – i.e., in both figures neither "Host A," "Host B," "Host C", or "Host D" receives the payload that it originally sends.  As such, Defendants argue that claim 5 of the '686 Patent, and the aspects of the specification that require echo suppression, do not alter the scope of claims that are explicitly worded to capture specific approaches to aggregation that do not employ echo suppression.

In reply, PalTalk contends that, even if echo suppression were not employed in figures 6 and 7, each host would still receive different messages because the destination addresses in each message are different.  In surreply, Defendants argue that although an "aggregated message" contains, in part, "destination data," there is no requirement that this destination data be the host's destination address.

### iii.    Defendants' Arguments

Defendants argue that the specification supports their proposed construction – i.e., that aggregating claims require the creation and delivery of a "single" identical message/payload to the various host computers.  Defendants argue that the patents are clear that combining all payload portions from multiple hosts to create a "single" identical outgoing message from the GMS is essential to "the present invention:"

Aggregation

A key concept in the present invention is the aggregation of multiple messages in a message queue into a single ULP receive message to a host that contains multiple payload items in the payload.[2]

'523 Patent at 23:49-53.  Considering that the specification states that aggregation of multiple messages into a "single" message is a "key concept of the present invention," Defendants argue

---

[2] The specification refers to the messages generated by the (GMS) as "ULP receive" messages.

that the aggregating claims must be limited to the creation and delivery of a single identical message. In response, PalTalk argues that the cited specification language merely describes the "concept" of aggregation and is completely silent about whether the same "single ULP receive message" that results from aggregation is sent to multiple host computers.

Finally, Defendants note that claims 1, 3, and 18 of the '686 Patent require that the aggregated message/payload be sent to multiple recipients and explain that the "aggregated message keeps the shared, interactive application operating consistently on each of said first subset of the plurality of host computers." Defendants also note that the PalTalk Patents do not explain how to maintain such application consistency in a method where the server generates a number of distinct messages for each recipient. Therefore, Defendants argue that, to maintain consistent application operation, the multi-recipient aggregating claims must be construed to require the creation and delivery of "single" identical messages/payloads to the various host recipients.

### iv. Analysis

Defendants are correct that the court should not blindly apply its previous analysis and construction of claim 5 of the '686 Patent to claims 1, 3, and 18 of the '686 Patent. In the Supplemental Order, the court specifically stated that its construction of claim 5's "server message" is supported by figure 7, which the court recognized "depicts the claimed echo suppression." As noted above, claims 1, 3, and 18 do not employ echo suppression. As such, the court rejects PalTalk's contention that it should apply its prior construction of claim 5 to claims 1, 3, and 18 without first analyzing those claims in light of both the intrinsic and extrinsic records.

The court, however, agrees with PalTalk's argument that the claim language supports its contention that the aggregated message/payload and server message recited in claims 1, 3, and 18 of the '686 Patent should be construed to mean "one or more" aggregated messages/payloads. As PalTalk notes, the indefinite article "'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *KCJ Corp.*, 223 F.3d at 1356. This convention is overcome "only in rare circumstances when the patentee evinces a clear intent to…limit the article." *Id.*; *see also Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1350 (Fed. Cir. 2005). In fact, in *Free Motion Fitness* the Federal Circuit concluded that "a cable" meant "one or more cables" despite the fact that the specification of the patent-in-suit made numerous references to a single cable. *Free Motion Fitness*, 423 F.3d at 1350. In this case, although there are numerous references to a "single" message/payload in the specification, nothing in the intrinsic record indicates that the patentee intended to limit claims 1, 3, and 18 of the '686 Patent to a *single* message/payload – much less a single *identical* message/payload, as Defendants contend. As such, the court concludes that the "aggregated message," "aggregated payload," and "server message" recited in claims 1, 3, and 18 of the '686 Patent mean "one or more" messages/payloads.

This construction is also supported by the written description of the invention. As Defendants note, "[i]t is often the case that different claims are directed to and cover different disclosed embodiments." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008). Therefore, as mentioned above, Defendants are correct that the varying payloads delivered to the hosts in figures 6 and 7 are not dispositive of the court's construction of claims 1, 3, and 18 of the '686 Patent because none of those claims explicitly employ echo suppression. Nevertheless, figures 6 and 7 also show that the aggregated messages/payloads and

server messages contain different destination addresses, which supports the conclusion that the claims do not require the delivery of a single identical message/payload.

Finally, the court rejects Defendants' argument that, to maintain application consistency as required by claims 1, 3, and 18 of the '686 Patent, the court must construe aggregated message/payload and server message to mean a "single" identical message/payload. Claim 5 of the '686 Patent, which the court previously concluded did not require the GMS to send the same message to each host computer, also explains that the "server message keeps the shared, interactive application operating consistently on each of the plurality of host computers." As such, in accordance with the claim construction orders in PalTalk I, the court rejects this argument.

In summary, the court concludes that the "aggregated message," "aggregated payload," and "server message" recited in claims 1, 3, and 18 of the '686 Patent means "one or more" messages/payloads. Furthermore, in accordance with the court's prior claim construction, the court concludes that "server message," as recited in claim 5 of the '686 Patent, means "one or more" messages.

## B.     "Aggregating" / "Aggregated"

The parties' dispute centers around whether the "aggregating" limitations require aggregating all payloads of incoming messages or only data items from those payloads. Most claims of the PalTalk Patents require that the GMS aggregate payloads of data sent to it from a plurality of host computers. As a representative example, claim 1 of the '523 Patent claims a method comprising the steps of sending messages "containing a payload portion" to a server and "aggregating, by said server in a time interval determined in accordance with a predefined criterion, said payload portions of said messages." PalTalk's proposed constructions of the

"aggregating" terms would require the server to aggregate at least one data item from the payload portions received from the host computers. Defendants' proposed constructions, on the other hand, would require the server to aggregate the entire payload portion of the messages received from the host computers.

###### i.      Prior Construction

The court previously addressed this very same issue in PalTalk I. There, the court initially construed "*aggregating, by said server* in a time interval determined in accordance with a predefined criterion, said *payload portions* of said messages to create an aggregated payload" to mean "the group messaging server forms an aggregated payload *by aggregating the payloads of all the claimed messages it receives* from the claimed plurality of host computers within a certain time period. The payloads may be aggregated in any order and the time period is certain in that it must arise from criteria specified prior to the beginning of the time interval." Original Claim Construction Order at 25, attached as Ex. D to PalTalk's Opening Claim Construction Brief. Following the court's first claim construction order, Microsoft asked the court to construe "said payload portions" to mean "the *entire payload portions* of the claimed messages." Essentially, Microsoft was seeking to obtain the exact same construction that Defendants seek here – i.e., that the GMS aggregates the entire payload portion of every message it receives from a host computer. The court rejected Microsoft's proposed construction, stating:

> this Court finds no support in the claim language or the specification for Microsoft's proposed limitation. The patent claims at issue nowhere require that the entire payload portion be aggregated—words of degree are absent from the claims' reference to payload portions and this Court find [sic] no reason to insert such limitations into the claims. In addition, this Court finds no support in the specification for the proposition that all payload elements, much less all data items, must be aggregated.

Supplemental Order at 5-6, attached as Ex. E to PalTalk's Opening Claim Construction Brief. The court went on to note that the PalTalk Patents teach that some data items within a payload may never be aggregated into an outgoing message. *Id.* Specifically, as illustrated below, one preferred embodiment of the PalTalk Patents discloses a payload portion with a single payload element, number 129, that consists of four data items, number 116, 117, 118, and 119:



*Id.* (citing '523 Patent at 14-25:51; 20:4-14); *see also* '523 Patent at Figure 9. Although the PalTalk Patents teach that 117, 118, and 119 are aggregated, data item 116 is not aggregated in this preferred embodiment. *Id.* (citing '523 Patent at 20:26-29 ("The ULP server process 140 will extract the single payload item from the message 117, 118, and 119 and place the payload item in each of the message queues 143.")). The court concluded that "[b]ecause data item 116 is not aggregated, a construction that requires aggregation of the entire payload would vitiate this preferred embodiment. Such a result is not proper." *Id.* at 6 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).

In light of its ruling, however, the court concluded that its prior construction of "aggregating, by said server…said payload,"[3] which referenced the full payload, was

---

[3] "The group messaging server forms an aggregated payload *by aggregating the payloads of all the claimed messages it receives* from the claimed plurality of host computers within a certain time period. The payloads may be aggregated in any order and the time period is certain in that it must arise from criteria specified prior to the beginning of the time interval."

inconsistent with its constructions of "aggregate"[4] and "payload portion,"[5] which referenced the payload's constituent data items. *Id.* To avoid jury confusion, the court revised its construction as follows: "aggregating, by said server…said payload portions of said messages to create an aggregated payload" means "the group messaging server forms an aggregated payload by aggregating *at least one data item from the payloads* of all the claimed messages it receives from the claimed plurality of host computers within a certain time period. *The data items* may be aggregated in any order and the time period is certain in that it must arise from criteria specified prior to the beginning of the time interval." *Id*. at 7.

### ii. The Parties' Arguments

PalTalk first argues that the court should adopt its previous construction, which does not require the server to aggregate the entire payload portion of each host message it receives. In support of its proposed constructions, PalTalk makes the same arguments that the court addressed in PalTalk I – namely, that: (1) the specification supports alteration of payloads because it expressly suggests processing the contents of the messages that the server receives ('523 Patent at 27:22-34); (2) the open-ended nature of the claims (i.e., the use of "comprising" and "contains") compels a non-restrictive reading of the patents; and (3) in one embodiment of the PalTalk Patents certain data items within the payload are never aggregated, even when the payload consists of only one payload element ('523 Patent at 20:9-11; 20:26-29; 23:53-55). In PalTalk I, the court concluded that it agreed with PalTalk's various arguments and, as discussed above, concluded that the aggregating terms require aggregation of only some of the data items that comprise the payload portion received by the GMS. Supplemental Order at 5-7, attached as Ex. E to PalTalk's Opening Claim Construction Brief.

---

[4] "To collect *two or more data items* together as a unit, however, where each data item retains its identity and may be extracted from the unit."

[5] The part of a message that *contains data item(s)* conveying information.

Defendants' response is premised on the following argument: (1) the parties agree that "payload portion" means "the part of a message that contains data items *conveying information*;" (2) data item 116, referenced in figure 9 and described at 14:37-50, does not convey information – it merely indicates how many payload portions are in the message; (3) as such, the "payload portion" is comprised only of data items 117, 118, and 119 – not data item 116; (4) the embodiment that the court concluded would be vitiated in PalTalk I requires that data items 117, 118, and 119 are aggregated, while data item 116 is not; and (5) therefore, contrary to the court's prior conclusion, construing the "aggregating" terms to require aggregation of the entire payload portion of every host message does not vitiate any embodiment of the '523 Patent because only data items 117, 118, and 119 are included in the definition of "payload portion." Defendants' rely on the following section of the specification for their argument:

> The payload format for ULP datagrams is defined by items 116, 117, 118, 119, 120, 121 and 122. Item 116 is the message count and defines how many payload elements will be contained in the payload. A single payload element consists of a triplet of source ULP address, data length and data. Items 117, 118 and 119 comprise the first payload element of the payload.

'523 Patent at 14:37-45.

### iii. Analysis

As discussed above, in PalTalk I, the court concluded that the PalTalk Patents teach that some data items within a payload may never be aggregated into an outgoing message. In fact, the court concluded that a construction requiring aggregation of the entire payload would vitiate a preferred embodiment of the invention. Having carefully considered the parties' arguments, the court is not convinced that the construction of the "aggregating" terms adopted in PalTalk I is incorrect. As such, in accordance with the previous construction of the "aggregating" terms, the

court concludes that it is not necessary for the GMS to aggregate the entire payload portion of each message it receives from the host computers.

## V. DISPUTED LIMITATIONS

Each of the disputed terms is construed below, taking into account the court's conclusions regarding the disputed issues.

### a. "Aggregating, by said server . . . to create an aggregated payload"

| Term | PalTalk's Proposed Construction | Defendants' Proposed Construction |
|------|-------------------------------|-----------------------------------|
| "aggregating, by said server in a time interval determined in accordance with a predefined criterion, said payload portions of said messages to create an aggregated payload"<br><br>**('523 Patent, Claim 1)** | "The group messaging server forms an aggregated payload by aggregating at least one data item from the payloads of all the claimed messages it receives from the claimed plurality of host computers within a certain time period. The data items may be aggregated in any order and the time period is certain in that it must arise from criteria specified prior to the beginning of the time interval." | "The group messaging server forms an aggregated payload by aggregating the payload portions of all the claimed messages it receives from the claimed plurality of host computers within a certain time period. The payload portions may be aggregated in any order and the time period is certain in that it must arise from criteria specified prior to the beginning of the time interval." |

The court adopts its prior construction of the "aggregating, by said server…to create an aggregated payload," which is the construction recommended by PalTalk. As such, the court concludes that "aggregating, by said server…to create an aggregated payload" means "the group messaging server forms an aggregated payload by aggregating at least one data item from the payloads of all the claimed messages it receives from the claimed plurality of host computers within a certain time period. The data items may be aggregated in any order and the time period is certain in that it must arise from criteria specified prior to the beginning of the time interval."

**b.** **"aggregating said payload portions…"** / **"aggregating said payload portions…to create an aggregated payload"** / **"aggregating said payload portions…to create an aggregated message"**

| Term | PalTalk's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "aggregating said payload portions…"<br><br>**('686 Patent, Claims 1, 3 and 12)** | "Aggregating at least one data item from the payloads of all the claimed messages from the claimed plurality of host computers. The data items may be aggregated in any order." | "Collecting all of the payloads portions together as a unit, however, where each payload portion retains its identity and may be extracted from the unit." |
| "aggregating said payload portions of said host messages …to create an aggregated payload"<br><br>**('686 Patent, Claim 1)** | "Aggregating said payload portions of said host messages...to create one or more aggregated payloads." | "The aggregated payload comprises all the payload portions received in the claimed host messages from the second subset of host computers." |
| "aggregating said payload portions of said messages…to create an aggregated payload"<br><br>**('686 Patent, Claim 12)** | "Aggregating said payload portions of said messages...to create one or more aggregated payloads." | "The aggregated payload comprises all the payload portions received in the claimed host messages from the second subset of host computers." |
| "aggregating said payload portions…to create an aggregated message"<br><br>**('686 Patent, Claim 3)** | "Aggregating said payload portions of said host messages...to create one or more aggregated messages." | "The aggregated message comprises all the payload portions received in the claimed host messages from the second subset of host computers." |

The court adopts PalTalk's proposed constructions of the "aggregating said payload portions…to create an aggregated" payload/message terms. PalTalk's proposed construction of "aggregating" references the payload's constituent data items and does not require aggregation of the entire payload. Furthermore, its proposed construction of "aggregated payload" and "aggregated message" reflects that the aggregated messages/payloads can be one or more messages sent to the host computers – i.e., there is no requirement that the server send a single identical message to each host computer.

### c. "forming a server message…"

| Term | PalTalk's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "aggregating said payload portion with the payload portion of a second host message received from another of the plurality of host computers belonging to said message group"<br><br>**('686 Patent, Claim 18)** | No additional construction necessary. | "Collecting the payload portions together as a unit, however, where each payload portion retains its identity and may be extracted from the unit." |
| "forming a server message by using said payload portion of said host message; and aggregating said payload portion with the payload portion of a second host message received from another of the plurality of host computers belonging to said message group"<br><br>**('686 Patent, Claim 18)** | "Forming one or more server messages, each containing one or more data items from the payload portion of the host message and one or more data items from the payload portion of a second host message received from another of the plurality of host computers belonging to said message group, where each of the data items retains its identity and may be extracted from the one or more server messages." | "Creating a server message that contains the payload portion of the claimed host message and the payload portion of the claimed second host message." |

PalTalk's proposed construction of "forming a server message by using said payload portion of said host message…" incorporates the court's prior construction of "aggregating" and addresses the "one or more" issue in the context of this limitation. As such, the court adopts PalTalk's proposed constructions – i.e., "forming a server message by using said payload portion of said host message…" means "forming one or more server messages, each containing one or more data items from the payload portion of the host message and one or more data items from the payload portion of a second host message received from another of the plurality of host computers belonging to said message group, where each of the data items retains its identity and may be extracted from the one or more server messages." Furthermore, in light of the court's decision to adopt PalTalk's proposed construction of the "forming a server message…" limitation, the court concludes that further construction of the "aggregating said payload portion…" language recited therein is not necessary and would not assist the jury.

**d.** **"aggregating" / "aggregated" / "aggregated payload" / "aggregated message" / "forming an aggregated message using said aggregated payload**

| Term | PalTalk's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "aggregating" / "aggregated" | "To collect two or more data items together as a unit, however, where each data item retains its identity and may be extracted from the unit." | No construction necessary in light of other "aggregation" terms.<br><br>Or<br><br>"To collect the payload portions together as a unit, however, where each payload portion retains its identity and may be extracted from the unit." |
| **Representative Claim Language:**<br><br>aggregating, by said server in a time interval determined in accordance with a predefined criterion, said payload portions of said messages to create an **aggregated payload**;<br><br>forming an aggregated message using said aggregated payload;<br><br>**('523 Patent, Claim 1; '686 Patent, Claims 1 and 12)** | No construction necessary.<br><br>Or<br><br>"One or more collections of at least one data item from the payloads of all the claimed messages from the claimed plurality of host computers, where each data item retains its identity and may be extracted from the collection. The data items may be aggregated in any order." | "The aggregated payload comprises all the payload portions received in the claimed host messages." |
| **Representative Claim Language:**<br><br>aggregating, by said server in a time interval determined in accordance with a predefined criterion, said payload portions of said messages to create an aggregated payload;<br><br>forming an **aggregated message** using said aggregated payload;<br><br>**('523 Patent, Claim 1; '686 Patent, Claims 1, 3 and 12)** | "One or more messages containing destination data and data items from an aggregated payload." | "A message containing destination data and an aggregated payload." |
| **Representative Claim Language:**<br><br>aggregating, by said server in a time interval determined in accordance with a predefined criterion, said payload portions of said messages to create an aggregated payload;<br><br>**forming an aggregated message using said aggregated payload;**<br><br>**('523 Patent, Claim 1; '686 Patent, Claims 1 and 12)** | "Creating one or more aggregated messages that contain data items from an aggregated payload." | "Creating a single aggregated message that contains the aggregated payload." |

PalTalk's proposed constructions of "aggregating" / "aggregated," "aggregated message," and "forming an aggregated message using said aggregated payload" reflect the court's rulings outlined above. Furthermore, considering PalTalk's proposed construction of "aggregated," the court agrees with PalTalk that no further construction of "aggregated payload" is necessary – any further construction would likely confuse the jury. As such, the court adopts the following constructions: (1) "aggregating" / "aggregated" means "to collect two or more data items together as a unit, however, where each data item retains its identity and may be extracted from the unit;" (2) "aggregated payload" needs no further construction in light of the court's construction of "aggregated;" (3) "aggregated message" means "one or more messages containing destination data and data items from an aggregated payload;" and (4) "forming an aggregated message using said aggregated payload" means "creating one or more aggregated messages that contain data items from an aggregated payload."

**e.        "server message" ('686 Patent, Claims 5 and 18)**

| Term | PalTalk's Proposed Construction | Defendants' Proposed Construction |
|------|-------------------------------|-----------------------------------|
| "server message" | "One or more messages formed by a server for delivery to one or more group members." | "Collecting the payload portions together as a unit, however, where each payload portion retains its identity and may be extracted from the unit." |

The court adopts PalTalk's proposed construction of the "server message" recited in claim 5 of the '686 Patent because it aligns with the court's construction in PalTalk I. Furthermore, the court adopts PalTalk's proposed construction of the "server message" recited in claim 18 of the '686 Patent because, as explained above, it is supported by both the claim language and the written description of the '686 Patent. As such, the court construes "server

message" to mean "one or more messages formed by a server for delivery to one or more group members."

## VI.    CONCLUSION

The court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the court.

It is so ORDERED.

SIGNED this 5th day of April, 2011.

CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE